UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| GREG PENNEY, | ) | |
| | ) | |
| Plaintiff, | ) | 1:24-CV-00009-DCLC-SKL |
| | ) | |
| v. | ) | |
| | ) | |
| HEATEC, INC. and ASTEC INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The matter is before the Court on Defendants' Motion to Dismiss Plaintiff Greg Penney's claims for failure to accommodate under the ADA and failure to engage in the interactive process under the ADA, 42 U.S.C. § 12112 *et seq.* For the reasons that follow, Defendants' Motion to Dismiss [Doc. 13] is **DENIED** as to both claims.

**I.    BACKGROUND**

Defendant Heatec, Inc. is a Tennessee corporation that manufactures road construction products. [Doc. 1, ¶ 4]. Defendant Astec Industries, Inc. is a Tennessee corporation, but it is not clear from the Complaint what relationship it has with Heatec. [*Id.* at ¶¶ 7–9]. Penny alleges that both Heatec and Astec determined the essential terms and conditions of his employment. [*Id.* at ¶ 8–9]. He worked as a welder and fitter from February 2012 to April 20, 2023, when his employment was terminated. [*Id.* at ¶ ¶ 8–9].

In 2020, Penney had a partial left knee replacement. [*Id.* at ¶ 18]. He alleges that while he continued to be able to perform the essential job duties, his medical condition "required [him to]

1

miss some additional time from work." [*Id.* at ¶ 18]. Early in 2022, Defendants hired "Rachel,"[1] a new human resources manager. [*Id.* at ¶ 19]. She advised Penney that he was missing too much time at work and instructed him to have his doctor submit FMLA paperwork. [*Id.* at ¶ 19]. In May 2022, Penney's physician submitted the requested paperwork to Defendants. [*Id.* at ¶ 20]. The FMLA paperwork included a restriction that he have a certain amount of intermittent FMLA leave. [*Id.* at ¶ 20]. The Complaint alleges that notwithstanding this restriction, he remained able to perform the essential job functions. [*Id.* at ¶ 20].

The Complaint further alleges that in December 2022, Rachel attempted to "create a basis for terminating [Penny's] employment." [*Id.* at ¶ 21]. She alleged that Penny was "taking too long to perform [job] tasks, and [she] wrote up [Penny] several times for this alleged deficiency." [*Id.* at ¶ 22]. The Complaint alleges that these "write-ups" were false as Penny continued to perform well all his essential job functions. [*Id.* at ¶ 23]. Notwithstanding his job performance, on April 20, 2023, the Complaint alleges Rachel terminated Penny's employment "based on her false allegations that [Penny] was taking too long to perform tasks." [*Id.* at ¶ 24]. Penny claims he was terminated because Defendants "did not want to accommodate [his] medical restrictions or [his] intermittent leave…." [*Id.* at ¶ 35].

This suit followed, alleging violations of the ADA including failure to engage in the interactive process to provide a reasonable accommodation as required by 42 U.S.C. § 12112(b)(5) and failure to provide a reasonable accommodation as required by 42 U.S.C. § 12112(b)(5). [*Id.* at ¶¶ 28–40]. He also alleged violations of the FMLA, including denying him FMLA leave, interfering with his exercise of that leave, and retaliating in response to his exercise of that leave. [*Id.* at ¶¶ 41–59].

---

[1] The Complaint only identifies Rachel by her first name.

Defendants filed a partial motion to dismiss on Penny's claims for failure to accommodate and failure to engage in the interactive process. [Doc. 13]. In support of their motion to dismiss, Defendants argue first that Penny did not request an accommodation under the ADA, and that his FMLA request cannot constitute a request for an ADA reasonable accommodation. [Doc. 14, pg. 5]. Without a request for an accommodation, Defendants argue, his failure to accommodate claim necessarily fails. The same is true for the failure to engage in the interactive process claim. [*Id.* at 5–6]. Next, Defendants argue that even if the Court considers Penney's FMLA submission a request for an accommodation under the ADA, the Court should still dismiss the ADA claims because Penney pled insufficient facts to state a plausible claim to relief. [*Id.* at 3–5]. Specifically, Defendants contend that Plaintiff did not allege in his complaint: the requirements of his position, why he needed an accommodation, when or how he requested an accommodation, what kind of accommodation he requested, with whom he requested an accommodation, or how Defendants responded to his request for an accommodation. [*Id.* at 3–4].

Penney counters that his submission of FMLA paperwork also constituted a request for accommodation under the ADA, triggering Defendants' obligation to at least engage in the interactive process. [Doc. 16, pg. 7–9]. Further, Penney claims that Defendants retaliated against him for making a request for an accommodation by creating a false pretext used to justify his termination. [*Id.* at 2–4].

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept its well-pleaded factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Courtright,* 839 F.3d at 518. But the Court is not required to accept as true legal conclusions or recitals of legal elements. *Iqbal*, 556 U.S. at 678.

## IV.  ANALYSIS

### A.  Failure to Accommodate Claim under the ADA

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

The plaintiff bears the initial burden of making out a prima facie case for failure to accommodate under the ADA. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). To establish a prima facie failure to accommodate claim, Penney must show that: (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for his position, with or without a reasonable accommodation; (3) the defendant knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the defendant failed to provide the necessary accommodation. *Id.* Defendants contest only the fourth element. They argue that Penney's submission of FMLA paperwork was not a request for an ADA accommodation, and that

Penny has otherwise not plead sufficient facts to trigger their duty to engage in the interactive process or to afford Penney an accommodation. [Doc. 17, pg. 2].

Employees bear the initial burden of requesting an accommodation, but they are entitled to some "flexibility in how they request [it]." *King*, 30 F.4th at 564 (internal citations and quotations omitted). Indeed, employees need not use "magic words" either to inform their employer of their disability or to request an accommodation. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 419 (6th Cir. 2020). Accordingly, the employee need not "explicitly use the word 'accommodation'" in requesting one and need not "identify the perfect accommodation from the start." *King,* 30 F.4th at 564 (internal citations and quotations omitted).

In *King*, a nurse repeatedly called in sick when she struggled with asthma. *Id.* at 565. When her asthma eventually left her incapacitated and unable to work, she requested FMLA leave. *Id.* at 565. Unbeknownst to her, she did not work the requisite number of hours during the year prior, and she was therefore ineligible for FMLA leave. *Id.* at 565–66. Without the leave, she was considered absent without approval, and the hospital terminated her. *Id.* at 558. The Sixth Circuit held that a reasonable factfinder could conclude that King's request for FMLA leave constituted a request for an accommodation under the ADA.[2] The Court reasoned that a jury could infer that these requests for FMLA leave – even when the plaintiff was ineligible – were requests for a reasonable accommodation under the ADA. *Id.* at 565. In other words, the Sixth Circuit held that, under the right circumstances, an employee's request for FMLA leave "would satisfy her burden to request an accommodation…" under the ADA. *Id.* at 565.

---

[2] Plaintiff correctly notes in their Reply in Opposition to Defendants' Motion to Dismiss that medical leave can – depending on the facts of the particular case – be an accommodation under the ADA.

5

Here, drawing all reasonable inferences in Penney's favor, it is plausible that his FMLA request could have constituted a request for an accommodation under the ADA. By his account, Penney occasionally missed work for almost two years because of complications from his knee replacement. [Doc. 1, ¶ 18.] When Rachel thought he was missing too much time from work, she instructed him to fill out FMLA paperwork. [*Id.* at ¶ 19]. The natural inference from Rachel's instruction to Penney is that she knew or suspected that Penney was entitled to leave for a reason protected by the FMLA, and that she wanted support for it. The FMLA paperwork that Penny submitted contained restrictions on his employment – specifically periods of intermittent leave – *from his physician*. [*Id.* at ¶ 20]. It is reasonable to infer from those allegations, taken as true at this point in the case, that Defendants knew – or at least should have known – that Penney requested intermittent FMLA leave because of his serious medical condition. Further, that the requested FMLA leave was intermittent, and that Penney generally continued to attend work and perform his duties, creates a plausible inference that he required occasional time off to accommodate his disability. Therefore, at this point in the case, it is plausible that Penney's FMLA request put Defendants on notice that Penney requested an accommodation under the ADA. *King*, 30 F.4th at 565.

Defendants urge the Court to adopt a per se rule that a request for FMLA leave cannot itself constitute a request for an ADA accommodation. [Doc. 17, pg. 2–3]. In support of this conclusion, Defendants cite a prior decision of this Court – *McTaggart v. Cath. Health Initiatives*, No. 1:19CV88, 2021 WL 6360699 (E.D. Tenn. Mar 30, 2021). There, the Court stated in a footnote that "[a] request for FMLA leave is not considered a request for an accommodation under the ADA." *Id.* at *6, n. 3. To be sure, at that point, *King* had not been decided and the Sixth Circuit had not otherwise addressed the issue. The undersigned was persuaded by the reasoning in *Acker*

6

*v. General Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017), and cited it for the proposition that "requesting FMLA leave alone is not a request for an ADA reasonable accommodation." *Id.* at 791. The Sixth Circuit's approach in *King* is markedly different from the Fifth Circuit's in *Acker*. In short, the Fifth Circuit calls impossible the same thing the Sixth Circuit calls possible. This Court is bound to follow Sixth Circuit precedent.

Next, Defendants contend in their Motion to Dismiss that "[t]he Complaint is devoid of any factual allegations to support Mr. Penney's contention that he requested a reasonable accommodation that was subsequently denied by Defendants." [Doc. 14, pg. 3]. Defendants argue that "Mr. Penney has not provided any facts regarding: (i) the requirements of his position; (ii) why he needed an accommodation; (iii) when or how he requested an accommodation; (iv) what kind of accommodation he requested; (v) with whom he requested an accommodation; or (vi) Defendants' response to his accommodation request." [*Id.*]

To survive the motion to dismiss, Penney's factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts in the complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). Here, Penney must plausibly allege that: (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for his position, with or without a reasonable accommodation; (3) the defendant knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the defendant failed to provide the necessary accommodation. *King*, 30 F.4th at 560.

Penney's complaint contains sufficient factual allegations to survive a motion to dismiss. On the first element, Penney identifies his partial knee replacement as the cause of his disability

7

under the ADA, and identifies "standing, walking, and working" as the major life activities that the partial knee replacement impacted. [Doc. 1, ¶¶ 18, 32]. Second, he alleges explicitly that he could perform the functions of his job and that he did perform them despite missing some time from work. [*Id.* at ¶ 20]. Third, Penney alleges that his "medical condition required that [he] miss some additional time from work," that "Rachel advised [Penney] that he was missing too many days from work, and she instructed [him] to have his doctor complete FMLA paperwork," and that "[i]n the FMLA paperwork, Plaintiff's doctor imposed certain restrictions, including a certain amount of intermittent FMLA leave." [*Id.* at ¶ 18–20]. That Rachel asked Plaintiff to fill out FMLA paperwork, and then received the paperwork that presumably identified Penney's medical condition, leads the Court to the reasonable inference that Defendants knew – or should have known – that Penney was disabled or at least in need of an accommodation. Fourth, as discussed above, Penney's submission of FMLA paperwork to Defendants could have been a request for an ADA accommodation. Finally, Penney explicitly states in his complaint that he took FMLA leave, but that Defendants failed to accommodate him under the ADA, and instead engaged in a pretext to terminate his employment. [*Id.* at ¶¶ 22–24]. These factual allegations satisfy every element of Penney's prima facie claim. Defendants' motion to dismiss Penny's failure to accommodate claim is **DENIED**.

B.      **Failure to Engage in the Interactive Process**

Defendants argue that Penney's failure to engage in the interactive process claim must be dismissed because an employer only incurs a duty to engage in the interactive process after an employee makes a request for a reasonable accommodation. [Doc. 14, pg. 6]. Because Penney's submission of FMLA paperwork did not constitute a request for a reasonable accommodation, Defendants contend that they never acquired such a duty. [*Id.*]. And, even if the request was one

8

Case 1:24-cv-00009-DCLC-SKL    Document 23    Filed 09/30/24    Page 8 of 9    PageID #: 90

for reasonable accommodation, Defendants reassert their argument that Penney pled insufficient facts to plausibly show that Defendants failed to engage in the interactive process. [Doc. 17, pg. 4].

"Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020) (internal citations and quotations omitted). The purpose of the interactive process is "to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). The interactive process is mandatory and requires both parties to participate in good faith. *Id.*

As discussed above, Penney plausibly alleged that Defendants refused to participate in the interactive process after his request for intermittent leave, which could have been a request for an ADA reasonable accommodation. If so, Defendants then had a duty to engage in the interactive process. And, according to the Complaint, they did not. Instead, the Complaint alleges, they engaged in a series of efforts to create a pretext for Penney's termination. Taken as true, these actions certainly do not constitute a "good faith" effort to "identify … potential reasonable accommodations that could overcome [Penney's] limitations." *Id.* Defendants' Motion to Dismiss the Failure to Accommodate claim is therefore **DENIED**.

## II.     CONCLUSION

For the reasons above, Defendants' Motion to Dismiss [Doc. 13] is **DENIED** as to both the failure to accommodate and failure to engage in the interactive process claims.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge

9